AMERICAN TELEVISION & COMMU-NICATIONS CORPORATION, d/b/a Monte Cable, Plaintiff,

v.

CITY OF MONTEVIDEO, MINNESOTA, Defendant.

Civ. No. 3–85–13.

United States District Court, D. Minnesota, Third Division.

March 22, 1985.

Alan M. Anderson and Steven C. Shroer of Faegre & Benson, Minneapolis, Minn., for plaintiff.

Janice M. Nelson of Nelson, Oyen, Torvile, Minge, Christopherson & Gilbertson, Montevideo, Minn., for defendant.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the Court is a trial on the merits based upon a stipulation of facts and documents pursuant to Federal Rule of Civil Procedure 65(a)(2). Because there is no material factual dispute, the Court has considered the matter as cross motions for summary judgment. *See* Fed.R.Civ.P. 56. On February 27, 1985 the court issued a bench ruling in favor of ATC. Apparently, this is the first decision construing the Cable Communications Policy Act of 1984, therefore the Court issues this Memorandum Order to explain its oral ruling.

American Television & Communications Corporation ("ATC") brings this action against the City of Montevideo ("the City"). ATC seeks a declaration that a five percent (5%) rate increase imposed on its subscribers January 1, 1985 is valid under its franchise agreement with the City ("the City Franchise"), and that a City resolution attempting to prevent the rate increase is invalid under the City Franchise [1] and the Cable Communications Policy Act of 1984 ("the Cable Act").

## FACTS

In February 1972, ATC was assigned the twenty-five (25) year cable television Franchise the City had granted to another franchisee in 1962. Pursuant to the City Fran-

---

1. Section 7–16–3 of the City Franchise, as codified and amended, incorporates by reference sections 82 through 89 of Chapter 10 of the 1947 Montevideo City Charter (the "1947 Charter"). Section 86 of the 1947 Charter establishes an arbitration procedure to be followed if the City and ATC fail to agree, "by direct negotiation," on rates for cable services. Although the 1947 Charter was suspended in 1969 by a new charter which omitted the arbitration provision, the City Franchise was never amended to incorporated the 1969 Charter. Until the instant dispute, ATC and the City had had no disagreements which would have required arbitration under the 1947 Charter. Since the Court finds that, under federal law, the Resolution in question did not preclude plaintiff's rate increase, it does not decide whether the Resolution was passed in violation of the City Franchise.

chise, ATC has continuously operated a cable television system since the assignment. In October 1984, Congress enacted the Cable Communications Policy Act, Pub.L. No. 98–549, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 2779 (to be codified at 47 U.S.C. §§ 601–639). The Cable Act established a uniform federal policy for the provision and regulation of cable television services, and preempted inconsistent state and local regulations. *See* 47 U.S.C. §§ 601, 623(a). In addition, the Cable Act authorized a cable franchisee to increase its rates up to five percent (5%) per year as follows:

> In addition to any other rate increase which is subject to the approval of a franchising authority, any rate subject to regulation pursuant to this section may be increased after the effective date of this title at the discretion of the cable operator by an amount not to exceed 5 percent per year if the franchise (as in effect on the effective date of this title) does not specify a fixed rate or rates for basic cable service for a specified period or periods which would be exceeded if such increase took effect.

47 U.S.C. § 623(e)(1). The Cable Act took effect on December 29, 1984.

The parties agree that the franchise in effect through December 17, 1984 permitted ATC to increase unilaterally its rates by five percent (5%), as authorized by section 623(e)(1). In early December 1984, ATC informed the City that it planned to increase rates for basic cable service by five percent (5%) effective January 1, 1985. The City responded by adopting Resolution No. 1150 (the "Resolution") on December 17, 1984 over ATC's objections. The Resolution provided that the existing rates for basic cable service were to remain in effect for two years or until the City Council approved an increase. The City thereafter informed ATC that it would consider ATC

to have breached the City Franchise if ATC increased its rates. This litigation ensued.

## ANALYSIS

■ Resolution No. 1150 states that basic cable service rates are to "continue in effect for a period of two years from the date of this resolution or until an increase is approved by the City council." This Resolution can be construed as merely requiring City Council approval of a new rate increase, something the City Franchise already required. If this is its only effect, the Resolution would be valid but ineffective in its attempt to preclude plaintiff's proposed rate increase. As previously mentioned, the Cable Act permits ATC's rates to be increased after December 29, 1984, "at the discretion of the cable operator." The Cable Act gives the franchisee (ATC) rather than the franchisor (the City) discretion to make the five percent (5%) rate increase. Therefore, unless the resolution amended the City Franchise to revoke ATC's discretion by providing for a fixed rate over a specified period of time, ATC's rate increase was valid.

■ The City concededly passed the Resolution in an attempt to prevent ATC from increasing its rates under the Cable Act by fixing the cable rates for the next two years. ATC argues that the City Franchise [2] did not specify a fixed rate for a specified period of time as required by the Cable Act. The Court agrees.

Under the plain meaning of the Cable Act, the Resolution, by its own terms, did not preclude ATC's rate increase. The Cable Act expressly requires that a franchise set forth a fixed rate *for a specified period of time.* Resolution No. 1150 provided that the rate would be set for two years or "until an increase is. approved by the City Council." By permitting an increase upon

---

**2.** "Franchise" as defined in the Cable Act is: an initial authorization or renewal thereof, including a renewal of an authorization which has been granted subject to section 626 issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, *resolution,* contract, cer-

tificate, agreement or otherwise, which authorizes the construction or operation of the cable system.

47 U.S.C. § 602(8) (emphasis supplied). Assuming the Resolution was validly enacted, it became a part of the City Franchise authorizing the operation of ATC's cable system.

approval of the City Council, the Resolution provided for increases at future unspecified times. Consequently, Resolution No. 1150 did not deprive ATC of its discretion to increase its rates under the Cable Act.

The legislative history supports this result. The House Report accompanying the Cable Act provides:

> [A]ccording to Subsection (e) unless the franchise agreement provides that a rate will be frozen at a particular level or levels for a specified period or periods, the cable operator may automatically increase any rate by 5 percent each year. Thus, franchise provisions which specify, for example, that "basic service rates shall be $10 in 1984" or that "basic service rates shall be $10 until 1986" shall preclude the operator from taking advantage of the statutory, automatic increase. Similarly, a franchise which specified that "basic service rates shall be $9 in 1984 and $10 in 1985" would preclude use of the automatic increase. However, *franchise provisions which allow for the franchising authority to consider adjustments to a specified rate* or do not fix rates for a specified period of time *will not preclude exercise of the automatic increase provided under this section.* For example, a franchise provision which states that "basic service rates shall be $10" would not be sufficient to preclude the availability of the automatic increase if the provision did not specify a fixed period of time for which the rate applied.

H.R.Rep. No. 934, 98th Cong. 2d Sess. 67 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 4655, 4704 (emphasis supplied). By allowing the franchising authority to consider adjustments to the rates, the City Council did not set the rate for a specified period of time as required by the Cable Act. Therefore, plaintiff lawfully implemented its five percent (5%) basic cable service rate increase.

## ORDER

Based upon the foregoing and the entire file, the Court finds in favor of plaintiff ATC and against defendant City of Montevideo.

IT IS DECLARED that plaintiff ATC is authorized under section 623(e) of the Cable Communications Policy Act of 1984 to increase its rates for basic cable services by five percent effective January 1, 1985.

IT IS FURTHER DECLARED that City of Montevideo Resolution Number 1150 is of no effect in its attempt to preclude such an increase.

IT IS ORDERED that the case be dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.